IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| JONATHAN CHAMBERS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 14 C 2545 |
| KUL B. SOOD, M.D., | ) ) | Judge John J. Tharp, Jr. |
| Defendant. | ) ) ) | |

## ORDER

For the reasons set forth in the Statement below, the defendant's motion to dismiss based upon the plaintiff's failure to exhaust his administrative remedies [94] is granted. The plaintiff's amended complaint [24] is dismissed without prejudice. Civil case terminated.

## STATEMENT

Dr. Kul Sood, the only remaining defendant in this case, seeks to dismiss Plaintiff Jonathan Chamber's medical indifference claim on the basis that Chambers failed to exhaust his administrative remedies while he was an inmate in the Illinois Department of Corrections ("IDOC"). Sood argues that Chambers "jumped the gun" by filing a federal action before appealing his underlying grievance through the proper IDOC channels. The Court agrees. Because Chambers had an available remedy through IDOC's grievance process, his failure to appeal his grievance prior to filing suit is fatal to his claim.

## BACKGROUND

The following facts are undisputed, or if necessary, drawn in a light most favorable to Chambers.[1] In late February 2014, Chambers was processed into Stateville's Northern Reception and Classification Center ("NRC"). According to Chambers, he asked to see a doctor during intake to treat a herpes outbreak. He was seen by Sood on March 1, 2014. Although Sood

---

[1] Chambers, represented by recruited counsel, takes issue with Sood's version of the facts and notes that the record is built on several exhibits that are being presented for the first time in this motion. (Pl.'s Resp. to Def.'s Mot to Dismiss 1, ECF No. 97.) The parties nonetheless agree on a number of material facts that create an adequate basis for the Court to rule on the motion. (*See id.* 1-2; Def.'s Reply in Supp. of Mot. to Dismiss 2, ECF No. 98.) Where the parties have not agreed on the facts, the Court relies only on Chambers' version of events. With regard to exhibits, Chambers does not dispute the authenticity of any of the documents attached to Sood's motion. In fact, he relies on the first five exhibits to support his own statement of facts. (*See* Pl.'s Resp. 1-3.) Thus, the Court has considered all of the exhibits that both parties relied upon in their briefs.

examined the outbreak and Chambers' medical file indicated a history of herpes, Sood did not prescribe anti-viral medication during the visit. Instead, he directed Chambers to "put in for sick call" (where he would have a $5 co-pay) to obtain the medication.

Following his visit with Sood, Chambers twice submitted a request for sick-call to obtain medication to treat his herpes outbreak; once on March 6, 2014 and again on March 8, 2014. Chambers then filed a written grievance on March 9, 2014 with his counselor, complaining that he had not yet been given a sick-call slip to obtain his herpes medication and had been in pain during that period. (IDOC Offender's Grievance 1-2, ECF No. 94-1.) Chambers requested to see a doctor that day and sought $60,000 in compensatory damages.

Chamber's counselor, Amy Gomez, responded to his grievance on March 13, 2014. (*Id.* at 1.) She stated that a copy of the grievance had been forwarded to the NRC's Health Care Unit ("HCU") for review and response. (*Id.*) She added that the original grievance had been forwarded to the Grievance Office for a final response after the HCU had addressed his complaint. (*Id.*) On March 21, 2014, Chambers was transferred to Western Illinois Correctional Center ("Western"). He had not received any herpes medication prior to his transfer.

On April 3, 2014, Stateville's Grievance Office issued a memorandum to Chambers stating that his grievance was being returned to him because it had not been reviewed prior to his transfer. (Grievance Office Mem. 1, ECF No. 94-2.) The memorandum informed Chambers that if he wanted to appeal his grievance, he must forward a copy of the grievance along with the memorandum to the Administrative Review Board ("ARB"). (*Id.*) Four days later, on April 7, 2014, Chambers filed a *pro se* complaint in this Court under 42 U.S.C. § 1983 alleging that he had been subjected to cruel and unusual punishment because the NRC had failed to timely provide him with herpes medication. Chambers did not send his grievance to the ARB before filing the complaint.

After Chambers filed suit, he drafted a second grievance on June 2, 2014, asking that that certain "medical staff" be suspended due to their failure to provide him with herpes medication. (IDOC Offender's Grievance 1, ECF No. 94-3.) This grievance stated that he had previously filed a grievance at the NRC on March 9, 2014 regarding his lack of medication and that he had received a memorandum confirming that his grievance had not been reviewed prior to his transfer to Western. (*Id.* at 1-2.) The ARB received Chambers' second grievance on June 6, 2014. (ARB Response 1, ECF No 94-4.)[2] In November 2014, the ARB investigated Chambers' claim to have been improperly denied herpes medication at the NRC and whether he had received medication after his transfer. (*See* Email between Sherry Benton, ARB, and Kindel Kestner, HCU Office Associate, Western Corr. Ctr. (Nov. 8-10, 2014), ECF No. 94-5.) On November 10, 2014, the ARB issued a response following its investigation, stating: "Per contact with HCU staff, [Chambers' herpes medication] claim cannot be substantiated as medically needed." (ARB Response 1.)

---

[2] Although it is not clear from the record, Chambers appears to have sent both grievances and the Stateville Grievance Office's memorandum to the ARB. (*See* Grievance 1-2, June 2, 2014, ECF No. 94-3; ARB Response 1.) The Court assumes for purposes of this motion that Chambers properly appealed both of his grievances.

**DISCUSSION**

The Prison Litigation Reform Act ("PLRA") states that a prisoner may not bring a federal action concerning prison conditions until all available remedies have been exhausted. 42 U.S.C § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). This requirement "applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and is "mandatory." *Ross*, 136 S. Ct. at 1856 (citations omitted). Moreover, "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "An inmate's perception that exhaustion would be futile does not excuse him from the exhaustion requirement." *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005) (citations omitted). That is, "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter*, 534 U.S. at 524 (citation omitted). To exhaust his administrative remedies, an inmate must take each of the steps prescribed by the state's prison grievance system. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) ("[A] prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

IDOC has an established process for addressing inmate grievances. *See* 20 Ill. Admin. Code § 504.800 *et seq*. An inmate should first attempt to resolve his grievance through his counselor. *Id.* § 504.810(a). If the grievance remains unresolved, the inmate may submit it to the prison's Grievance Office for further review and investigation. *Id.* After investigating the inmate's complaint, the Grievance Office must submit its findings and recommendations to the facility's Chief Administrative Officer ("CAO") (usually the warden), who then issues a ruling to the inmate. *Id.* § 504.830(d). If the inmate disagrees with the CAO's decision, he may appeal his grievance to the Director of IDOC through the ARB. *Id.* § 504.850(a). After reviewing the ARB's findings and recommendations, the Director renders a final determination on the grievance within six months of the appeal, where feasible. *Id.* § 504.850(e). Finally, if an inmate is transferred after an incident occurs, he may file his grievance directly with the ARB. *Id.* § 504.870(a)(4). The ARB must then review the grievance in the same manner and within the same timeframe as if the inmate had appealed from his original facility. *Id.* § 504.870(b).

Sood argues that Chambers' medical indifference claim is barred by the PLRA. (Def.'s Mot. to Dismiss 3-5, ECF No. 94.) Although Chambers submitted a written grievance to his counselor and Stateville's Grievance Office before filing suit, he had not appealed his grievance to the ARB. Thus, Sood contends, Chambers failed to exhaust IDOC's grievance procedures. The Court agrees. Although Sood bears the burden of establishing a failure to exhaust, *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011), Chambers unquestionably jumped the gun. His initial complaint was filed on April 7, 2014. (Compl., ECF No. 1.) However, Chambers did not appeal his grievances to the ARB until June 2014. (*See* ARB Response 1.)

Although the ARB addressed Chambers' grievances while this case has been pending, that does not cure his false start. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (affirming dismissal for failure to exhaust where inmate "jumped the gun" in filing suit before IDOC announced final decision on inmate's grievance appeal); *see also Wilson v. Obaisi*, No. 13 C 3656, 2016 WL 3640412, at *3-4 (N.D. Ill. July 7, 2016) (dismissing inmate's suit for failure to exhaust because ARB appeal was still pending at time inmate filed suit). Nor does it matter that Chambers filed an amended complaint after the ARB resolved his appeal in November 2014.

The consequence of filing a premature suit under the PLRA is dismissal without prejudice, *Ford*, 362 F.3d at 398, 401 (discussing how suits filed too soon should be dismissed without prejudice, "even if the plaintiff exhausts his administrative remedies while the litigation is pending"); *see also Wilson*, 2016 WL 3640412, at *2 (stating that "lawsuit must be dismissed" if inmate files suits before exhausting remedies); thus, Chambers was required to file an entirely new action, not an amended complaint, after his claim was exhausted.

Chambers' response is that he did not need to exhaust his remedies because none were "available" to him. (Pl.'s Resp. 3-5.) In support of his argument, he cites to *Perez v. Wisconsin Department of Corrections*, in which the Seventh Circuit posed the following hypothetical:

> Suppose the prisoner breaks his leg and claims delay in setting the bone is cruel and unusual punishment. If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy,' and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust.

182 F.3d 532, 538 (7th Cir. 1999). Chambers contends that, like the hypothetical prisoner in *Perez*, he suffered harm that the NRC could no longer address once he was transferred, and seeks only monetary damages, which IDOC's grievance system cannot provide him. (Pl.'s Resp. 4-5.) The Court finds this argument unavailing for two reasons.

As an initial matter, Chambers' transfer has no bearing on whether he was able to exhaust his remedies. Regardless of whether he was transferred, Chambers would have needed to appeal his grievance to the ARB. *See* 20 Ill. Admin. Code §§ 504.850, 504.870. And, in either case, the ARB is required to follow identical procedures and resolve his grievance within the same six-month timeframe.[3] *Id.* Thus, the transfer had no effect on Chambers' ability to complete the grievance process. *See Flourney v. Schomig*, 152 Fed. App'x 535, 537-38 (rejecting inmate's argument that remedies were "unavailable" due to transfer between IDOC facilitates in affirming dismissal of medical indifference claim).

Moreover, Chambers' reliance on the exception discussed in *Perez* is misplaced. Although the *Perez* hypothetical is dicta, the Seventh Circuit has since found administrative remedies to be unavailable where an inmate suffers harm due to improper medical care and that harm could no longer be rectified through a prison grievance process. *See, e.g.*, *White v. Bukowski*, 800 F.3d 392, 394-96 (7th Cir. 2015) (finding that incarcerated inmate seeking only monetary damages due to inadequate prenatal care was not required to exhaust remedies because inmate did not know about the inadequacy until after her child was born, by which time, it was too late to address birth defects that arose). Yet, at the same time, the Seventh Circuit has cautioned that "as long as there is ***something*** the jail or prison could do in response to a grievance, even if it is not the specific relief sought by the prisoner," then an inmate has an available remedy. *Id.* at 395 (citing *Porter*, 534 U.S. at 524-25; *Larkin v. Galloway*, 266 F.3d 718, 723 (7th Cir. 2001)) (emphasis in original).

---

[3] The only difference is that, had he not transferred, Chambers would have needed to wait for Stateville's CAO to render a final decision before appealing to the ARB. *See* 20 Ill. Admin. Code § 504.850(a). But that difference has no bearing on the outcome of this motion.

Here, Chambers had an available remedy because there was something IDOC could do to address his grievance: ensure he received his herpes medication. Indeed, that appears to be exactly what the ARB did when it investigated Chambers' complaint. (*See* Email, ECF No. 94-5 (reflecting that Chambers began receiving herpes medication when he had another breakout).) Chambers tries to resist this conclusion in two ways. He first focuses on what the **NRC** could have done for him, which was nothing after he was transferred. (Pl.'s Resp. 3-4.) But what matters for exhaustion purposes is what **IDOC** could have done; indeed, the Director of IDOC is the final authority on inmate grievances. *See* 20 Ill. Admin. Code § 504.850(e). Moreover, Chambers suggests that by the time he was transferred, the herpes outbreak that had spurred his March 9, 2014 grievance had subsided; thus, there was nothing anyone could do to alleviate the pain he had endured while housed at the NRC. (Pl.'s Resp. 4.) But even assuming that is true (the record is not clear on this point), IDOC's response to his grievance could help to treat any future herpes outbreaks. (*See* IDOC Offender's Grievance 2, June 2, 2014, ECF No. 94-3 (discussing potential for future outbreaks in discussing need for herpes medication); *see also Genital Herpes - CDC Fact Sheet (Detailed)*, Ctrs. for Disease Control and Prevention (Feb. 9, 2017), https://www.cdc.gov/std/herpes/stdfact-herpes-detailed.htm (stating that "[r]ecurrent outbreaks of genital herpes are common" but that "[a]ntiviral medications can . . . prevent or shorten outbreaks during the period of time the person takes the medication").) Thus, Chambers had an available remedy that he was required to exhaust before filing suit.

\* \* \*

Because Chambers had an available remedy, yet failed to follow all of IDOC's grievance procedures before filing suit, his medical indifference claim is barred under the PLRA for failure to exhaust his administrative remedies. Sood's motion to dismiss is therefore granted and Chambers' amended complaint is dismissed without prejudice. Because this lawsuit was filed prematurely, however, it must be terminated. This is a final order disposing of this case.

Date: November 6, 2017

John J. Tharp, Jr.
United States District Judge

5